**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| JOEL LAZARO LAZARO, | * | |
| Petitioner, | * | |
| v. | * | Civ. No. 8:25-cv-3162-PX |
| NIKITA BAKER *et al.*, | * | |
| Respondents. | * | |
| | *** | |

**<u>MEMORANDUM ORDER</u>**

Pending before the Court is Petitioner Joel Lazaro Lazaro ("Lazaro Lazaro")'s Petition for a Writ of Habeas Corpus in which he seeks to be free from ICE ankle monitoring pending his third country removal.  ECF Nos. 1, 14, 21.  Respondents oppose the Petition and move to dismiss for lack of habeas jurisdiction.  ECF No. 15.  After full briefing and a hearing on the merits, the Court denies the Petition.

Lazaro Lazaro, a citizen of Peru, entered the United States on October 1, 2023, without documentation. ECF No. 1 ¶ 40; ECF No. 25 ¶ 1.  Respondents issued him a Notice and Order of Expedited Removal, and he thereafter expressed fear of returning to Peru.  ECF No. 25 ¶¶ 1, 3; ECF No. 26 ¶¶ 4, 6.  Pending his credible fear interview with the United States Citizenship and Immigration Services ("USCIS"), U.S. Immigration and Customs Enforcement ("ICE") enrolled Lazaro Lazaro in the Alternatives to Detention-Intensive Supervision and Appearance Program ("ISAP"), which required that he wear a GPS ankle monitor and abide by a curfew.  ECF No. 25 ¶ 2; ECF No. 26 ¶ 8.  *See also* ECF No. 15-1, citing *Alternatives to Detention*, IMMIGR. & CUSTOMS ENFORCEMENT, https://www.ice.gov/features/atd (last visited May 7, 2026).  On November 15,

2023, after USCIS determined that Lazaro Lazaro presented a credible fear of return to Peru, ICE removed the ankle monitoring and lifted visitation requirements.  ECF No. 25 ¶ 5; ECF No. 26 ¶ 11.  At that point, ICE required only that Lazaro Lazaro periodically check in.  ECF No. 1 ¶ 34.

On February 21, 2025, an Immigration Judge ("IJ") concluded that Lazaro Lazaro is inadmissible pursuant to INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), and ordered his removal.  ECF No. 1-1 at 4, 6.  The IJ also granted withholding of removal to Peru pursuant to the Convention Against Torture ("CAT withholding").  *Id.  See also* ECF No. 1 ¶ 32; 8 C.F.R. § 1208.61.  CAT withholding confers on a noncitizen protection solely from return to the country from which the noncitizen claims fear of torture.  *Johnson v. Guzman Chavez*, 594 U.S. 523, 531 (2021) (citing 8 C.F.R. §§ 208.16–208.17, 1208.16–1208.17).  Otherwise, the noncitizen can be removed to a third country pursuant to 8 U.S.C. § 1231(b)(3).

ICE initially kept Lazaro Lazaro on the same release conditions in place at the time he received CAT withholding.  But on September 5, 2025, and without forewarning, ICE reinstalled him on GPS ankle monitoring pursuant to the ISAP program.  ECF No. 25 ¶¶ 9–10.  *See also* ECF No. 25-2.  ICE uses the ankle monitor to track Lazaro Lazaro's whereabouts.  ECF No. 26 ¶ 16. He also must report in person to the ISAP office once every eight weeks and remain home once every other month during business hours for an ICE visit.  ECF No. 25 ¶ 12; ECF No. 26 ¶ 14.

According to Jefferson King, Supervisory Detention and Deportation Officer for Enforcement and Removal Operations in the ICE Baltimore Field Office, GPS monitoring through ISAP allows ICE to locate noncitizens such as Lazaro Lazaro to effectuate third country removal "at the appropriate time." ECF No. 26 ¶ 16.  The GPS ankle monitoring also allows ICE to supervise the "overwhelming number of [noncitizens]" more efficiently than periodic reporting

requirements.  *Id.* ¶ 14.  To date, ICE has not identified a third country to which Lazaro Lazaro will be removed.  ECF No. 1 ¶ 38; ECF No. 21 at 3.

Lazaro Lazaro now argues that Respondents' reinstallation of GPS ankle monitoring without notice and an opportunity to be heard violates his Fifth Amendment Due Process rights, and he asks that the Court order ICE to remove the monitor.[1]  Respondents principally contend that this Court lacks jurisdiction to review Lazaro Lazaro's release conditions because he is not in "custody" for purposes of triggering habeas review.  ECF No. 15.  Alternatively, even if he is in technically in "custody," Respondents argue that ICE is free to adjust his release conditions without formal process so long as the conditions are rationally related to the legitimate supervisory interests.  *Id*.  The Court considers each argument in turn.

First, Lazaro Lazaro is in "custody" sufficient to confer habeas jurisdiction.  A petitioner is considered "in custody for purposes of the habeas corpus statute" if he is subject to restraints "'not shared by the public generally.'"  *Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist., Santa Clara Cnty., California*, 411 U.S. 345, 351 (1973) (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)).  These restraints include those "short of physical confinement."  *Rumsfeld v. Padilla*, 542 U.S. 426, 437 (2004).  As the Fourth Circuit recently concluded, "custody" is triggered even by a "final deportation order."  *Asemani v. Dir., Off. of Det. & Removal, Dep't of Homeland Sec., Immigr. & Customs Enf't*, No. 25-6012, 2026 WL 810922, at *1 (4th Cir. Mar. 24, 2026) (quoting *Rosales v. Bureau of Immigr. & Customs Enf't*, 426 F.3d 733, 735 (5th Cir. 2005)).  Accordingly, because Lazaro Lazaro has a final deportation order and is supervised by GPS ankle monitoring,

---

[1] At the hearing on this Petition, Lazaro Lazaro conceded his remaining claims in Counts II, III and IV are not viable and so the Court treats them as withdrawn. Lazaro Lazaro separately challenges any eventual third-country removal as undertaken without notice and an adequate opportunity to raise separate fear claims.  ECF No. 1 ¶¶ 19–24.  The Court considers that claim not ripe for review because nothing suggests Respondents have identified a potential third country for removal.  That claim is dismissed without prejudice to refile if the matter becomes ripe.

he is subject to restraints "not shared by the public generally," thus conferring habeas jurisdiction. *See, e.g.*, *Khabazha v. United States Immigr. & Customs Enf't*, No. 25-CV-5279 (JMF), 2025 WL 3281514, at *3 (S.D.N.Y. Nov. 25, 2025); *Batz Barreno v. Baltasar*, 816 F. Supp. 3d 1255, 1258 (D. Colo. 2026); *N- N- v. McShane*, 813 F. Supp. 3d 496, 499 n.1 (E.D. Pa. 2025); *Harrington v. Albarran*, No. 26-CV-01889-JST, 2026 WL 800113, at *4 (N.D. Cal. Mar. 23, 2026).

But this is a separate matter than whether GPS ankle monitoring subjects Lazaro Lazaro to indefinite *detention* akin to physical confinement, thus triggering the protections articulated in *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Lazaro Lazaro urges that the GPS ankle monitor is tantamount to "detention" and prolonged electronic monitoring "raise serious constitutional concern" under *Zadvydas*. *Id.* at 682; ECF No. 1 ¶¶ 43–54. Lazaro Lazaro further contends that because his third-country removal is not reasonably foreseeable, *Zadvydas* commands that he be released from such conditions of "confinement." *Id.* at 697, 701; ECF No. 1 ¶ 47.

This argument fails principally because Lazaro Lazaro's release conditions do not restrict his liberty in a manner approximating "detention" in *Zadvydas*. Rather, Lazaro Lazaro is on a GPS monitor to track his whereabouts. He is otherwise free to leave his home, to work, and to move about within his community. Indeed, as *Zadvydas* itself recognized, its holding "nowhere" can be extended to "deny the right of Congress to . . . subject [noncitizens] to supervision with conditions when released from detention." 533 U.S. at 695. *See Yusov v. Shaughnessey*, 671 F. Supp. 2d 523, 528–29 n.6 (S.D.N.Y. 2009), *aff'd sub nom.*, 396 F. App'x 780 (2d Cir. 2010) ("[T]he *Zadvydas* Court implicitly endorsed indefinite supervision when it held that deportable aliens with no foreseeable possibility of deportation should be released under supervision."). Accordingly, *Zadvydas* simply does not extend to ICE's imposition of GPS ankle monitoring.

For similar reasons, the Court rejects Lazaro Lazaro's reliance on decisions involving ICE's attempts to set more onerous conditions than those an IJ has imposed in connection with bond reviews under 8 U.S.C. § 1226(a).  ECF No. 21, citing *Batz Barreno*, 816 F. Supp. 3d at 1258–59 (ordering "removal of the ankle monitor" because it was "not specifically and explicitly imposed in writing by the IJ" at the § 1226(a) bond hearing); *McShane*, 813 F. Supp. 3d at 501–02 (concluding that ICE cannot add conditions of release beyond IJ's conditions imposed after a § 1226(a) bond hearing); *Harrington*, 2026 WL 800113, at *8 (same).  *See also Campbell v. Almodovar*, No. 1:25-CV-09509 (JLR), 2025 WL 3626099 (S.D.N.Y. Dec. 15, 2025) (ICE cannot add ankle monitoring condition after IJ determination under § 1226(a) without individualized reassessment consistent with the statute and implementing regulations); *Khabazha*, 2025 WL 3281514, at *5.  Section 1226(a) confers an individualized bond hearing to be conducted by an IJ.  Accordingly, the IJ—not ICE—retains authority to set or alter conditions of release.  *See* 8 U.S.C. § 1226(a).  But that is a very different scenario than here.

Lazaro Lazaro is subject to a final order of removal, and so, his detention and release are governed by 8 U.S.C. § 1231, not § 1226(a).  Importantly, §1231 not only requires detention during the 90-day removal period; it next confers on ICE the authority to impose and alter such release conditions as warranted.[2]  Without more, the Court cannot simply transmute the jurisprudence surrounding § 1226(a) bond hearings to post-removal release considerations under § 1231.

ICE's reimposition of the GPS ankle monitor for Lazaro Lazaro does not amount to a due process violation.  Undoubtedly, "[f]reedom from imprisonment—from government custody,

---

[2] 8 U.S.C. § 1231(a)(3) delegates to the Attorney General the authority to prescribe regulations governing the supervision of a noncitizen after the post-removal period.  The regulation applicable here, 8 C.F.R. § 241.5(a), permits ICE's Commissioner, Deputy Commissioner, Executive Associate Commissioner Field Operations, regional director, district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer-in-charge to specify the conditions of an order of supervision.

detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects," *Zadvydas*, 533 U.S. at 690.  To determine whether such restrictions are accompanied by the necessary process that "the particular situation demands," the Court must consider "three distinct factors."  *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).  First, "the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*  Each factor cuts against a due process violation.

As to the first factor, to the extent GPS ankle monitoring infringes on Lazaro Lazaro's private interests, the infringement is minimal.  Apart from his limitations on travel (to remain within the Maryland/Virginia/D.C. area) and to remain at home once every other month for an ICE home visit, Lazaro Lazaro is free to leave his house, to work, and to handle his daily business. Second, the risk of "erroneous" deprivation is likewise relatively low, given that "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal."  *Demore v. Kim*, 538 U.S. 510, 528 (2003). Additionally, publicly available ISAP materials reflect that those enrolled can avail themselves of administrative review, minimizing the risk of erroneous deprivation.  *Nguyen v. B.I, Inc.*, 435 F. Supp. 2d 1109, 1113 (D. Or. 2006) (discussing ISAP formal grievance process available to "challenge an alleged program violation"). [3]  Lazaro Lazaro does not engage on this point.  Third, the Government retains a keen interest in minimizing abscondence and maximizing efficient means to locate the noncitizen when removal is imminent.  Accordingly, the Court cannot conclude

---

[3] The Court takes judicial notice of the ATD-ISAP Administrative Handbook.  The 2017 version is publicly available at https://www.ice.gov/doclib/foia/policy/handbookATD_08.16.2017.pdf.

that Lazaro Lazaro's re-enrollment in ISAP with GPS ankle monitoring and attendant restrictions amount to a due process violation. *Cf. Gozo v. Mayorkas*, Civ. No. 1:23-cv-159, 2024 WL 2027510, at *4 (S.D. Tex. Mar. 4, 2024) (concluding that ISAP ankle monitoring rationally related to legitimate government purpose of removing noncitizens with final orders of removal); *Lopez Lopez v. Charles*, Civ. No. 12-cv-101445-DJC, 2020 WL 419598, at *4 (D. Mass. Jan. 26, 2020) (same); *Yusov*, 671 F. Supp. at 530 (concluding GPS ankle monitoring rationally related to government supervision interests and relying on *Demore*, 538 U.S. at 528); *Nguyen*, 435 F. Supp. 2d at 1115 (same). *Kalombo v. Shanahan*, No. 07-CIV-11350 (PKC), 2009 WL 1788589, at *5 (S.D.N.Y. June 23, 2009) (same).

In sum, although Lazaro Lazaro's frustration with ISAP's GPS monitoring is well placed, the restriction is permissible and he has failed to demonstrate that Respondents owed him additional process before reenrolling him in the ISAP program. The Petition for Habeas Corpus, therefore, must be denied.

Accordingly, it is this 7th day of May 2026, by the United States District Court for the District of Maryland, hereby **ORDERED** that:

1. Respondents' Motion to Dismiss (ECF No. 15) is **DENIED**;

2. The Petition for Writ of Habeas Corpus is **DENIED** consistent with this Order;

3. The Clerk **SHALL CLOSE** this case.

_____/s/_____

Paula Xinis
United States District Judge
